### ADAMS v. BOSTON STORE.

(District Court, N. D. Illinois, Eastern Division. August 24, 1914.)

No. 30968.

PATENTS (§ 328\*)—NOVELTY—JOINT CONNECTION FOR BEDSTEADS.

The Adams patent, No. 923,235, for a joint connection for metal bedsteads, while covering a device which is simple, economical, and successful, is void for lack of novelty, in view of prior devices of similar construction.

In Equity. Suit by George Adams against the Boston Store. On final hearing. Decree for defendant.

George E. Waldo, of Chicago, Ill., for complainant.

Offield, Towle, ·Graves & Offield, of Chicago, Ill. (Albert H. Graves and Frank L. Belknap, of Chicago, Ill., and Louis Quarles, of Milwaukee, Wis., of counsel), for defendant.

SANBORN, District Judge. This is an infringement suit, brought on patent No. 923,235, dated June 1, 1909, applied for January 27,

1909, issued to George Adams for a joint connection for metal bedsteads. The device is made by fastening a small fixture, known as a mold plate or cavity cup, on the inside of the upright corner post of the bed, holding it there by a screw which reaches through the mold plate and is pressed against the inner opposite side of the hollow bedpost, while a metal casting is made which fills the cavity of the mold plate and projects through upon the outside of the post, in order to make a corner fastening, by means of which the side rails of the bed are connected to the post. This casting is referred to in the testimony as a frenching. A hole or opening is made in the post. The mold plate is then inserted into the end of the post, and brought into position opposite the hole or opening. A screw is inserted through this hole and through the mold plate, and turned up until the end of the screw bears against the opposite inner surface of the post. A closed cavity is thus made between the inner surface of the post and the mold plate. The post is then placed in a mold, and molten iron or lead is then poured into the mold, which will fill the cavity to form the corner fastening, and also flow through the hole in the post and fill the cavity.

When complainant was making his prima facie case, he did not attempt to carry the date of invention back of the time of application, January 27, 1909. On the cross-examination defendant attempted to show by the complainant the earliest date of his invention. At that time complainant was not able to remember any positive date earlier than his application when he had conceived or produced his device. Complainant's counsel objected to the attempt of defendant to establish the date of invention by the testimony of complainant, George Adams, but the latter was ruled by the court to answer questions along this line, and did so, but, as stated, was unable to fix any earlier date. Defendant having given testimony tending to show a prior use considerably earlier than the complainant's date of application, on rebuttal complainant produced testimony and records tending to carry his date of invention back to January, 1908. It was contended by defendant that complainant's testimony along this line was inadmissible, by reason of the testimony of complainant on his cross-examination, above referred to.

While the defendant of record in this case is the Boston Store, it appears that the bed which is alleged to infringe was manufactured by the Simmons Manufacturing Company, of Kenosha, Wis., and the latter has assumed the defense of the suit, with the acquiescence of complainant, and has therefore become a party. It appears that in the spring of 1906 the Simmons Company manufactured an iron bed upon an order made by the Michael Reese Hospital, at Chicago, and the cost estimate on this bed was made March 9, 1906. From the records of the Simmons Company it appears that there was a cavity cup made for the purpose of forming a frenching or dovetail on the outside of the rail. This was a double cup instead of a single one, as in the patent in suit. Defendant gave considerable testimony describing how the cup was held in place when the mold was made, but this testimony may possibly relate to a later date, and of itself

would not be sufficient to establish any prior use. It appears, however, that this double cavity cup was described in certain foundry cost cards put in evidence, which show threaded wires or screws, iron castings and frenchings, together with estimates for forming the frenching, drilling the posts or pillars, and putting on the casting for reinforcement of the cavity cup. A witness was produced who personally made the cost estimate, and who remembered what the items referred to, and the date inserted on one of the cards is March 9, 1906. Other witnesses were sworn tending to corroborate this evidence, and the superintendent of the Michael Reese Hospital was produced as a witness on the hearing, and testified to certain bed ends, which had been theretofore offered, as having been taken from the Michael Reese Hospital. He was not able, however, to state that this bed end came from the first lot of beds sold to the hospital. This bed end shows the double cavity cup construction above referred to.

From all the evidence, I am convinced that the defendant's prior use of the double cavity cup is established as of the date of March, 1906. The records were offered in evidence, and it is claimed by the witnesses they clearly show the making of the double cavity cups and the frenching connecting them to the bed post prior to July, 1906, and, although no bed of this construction is clearly proved, yet the evidence is satisfactory that such a bed was manufactured before the July furniture exposition in Chicago held in 1906. Such an exposition was held twice a year, in January and July, for the purpose of exhibiting all classes of furniture.

On the part of complainant it was likewise satisfactorily shown that his invention was made in the winter of 1907 and 1908, for the purpose of the January exposition of 1908. Records of the Art Bedstead Company, of Chicago, with which complainant was connected, were produced that clearly show the manufacture of three beds with the single mold plate of the patent as early as January, 1908.

It appears, therefore, that the Simmons Company was first in the field with a mold plate construction, and that, unless the construction of complainant can be fairly distinguished from the double mold plate or cavity cup of March, 1906, the patent must be held to have been anticipated. It is argued by counsel for the complainant that the double cavity cup does not anticipate. It appears from the testimony that, instead of one cavity held up against the inside of the bedpost to receive the molten iron or lead, the Simmons construction was double; two cavities being held up against the inside of the post for the reception of the molten material. By a screw or threaded wire the double cavity cup was held up against the inside of the post. Holes were made in the post on each side of the center of the cup. The device was then placed under a mold and a frenching made, substantially as described in respect to the mold plate of the patent. The main difference between the double plate construction and that in the patented construction is that the screw goes through to the opposite side of the post and bears against it like a strut, while in the double construction the screw merely reaches through the

mold plate. There are some further details which are different in the two constructions. The single mold plate may be inserted and secured in position more easily and quickly than the double cup. It is also claimed that the complainant's construction is stronger and firmer than the old double plate construction. In the latter the cast metal does not interlock with the screw used to secure the double cavity cup in position, and does not reinforce or strengthen the joint, although it goes through two holes opposite the cavity in the double cup and fills up those cups on either side of the screw, which is located in the center, thus making a long bearing on the inside of the post as well as on the outside. While the single cup construction is an improvement upon the double cup, and may be more cheaply and quickly made, on account of using less material, and although the latter has gone into quite general use for cheap bedsteads, yet it seems perfectly plain that the two are substantially identical in the principle of construction. In order to make a frenching or dovetail device for the side rails of the bed it is necessary to have a cast metal joint, which extends from the outside to the inside of the upright post. In order that this may be properly made, it is necessary to insert a cavity cup on the inside of the post, and hold it there temporarily while the casting is being made; also that the casting shall extend on the inside and on the outside of the post, so as to make a firm joint or connection for the support of the bed rails. It appears from the testimony that this has been done in a variety of ways; the principle of construction remaining the same in all forms. It is entirely clear that there could not be any invention in substituting a single cavity cup for a double one, or in extending the screw designed to hold the cup in place through the post so it could bear upon its opposite inside surface.

It is true that the complainant's device has met with success as a practical, cheap device for bedsteads selling at a low cost, and that, if there were doubt on the question of invention or novelty, the adoption of the device by the Simmons Company and the general use of the invention in the construction of such beds would be sufficient to determine the question of patentability. It is, however, entirely clear that, with the double cavity construction of the Michael Reese Hospital bed established, there could not possibly be any invention in changing the construction from a double to a single cup and extending the retaining screw entirely through the hollow post. This would be a mere development in the process of construction, which would inevitably occur.

The patentee, on the prima facie case made by complainant, had apparently entirely forgotten the construction of his device in the shop of the Art Bedstead Company in January, 1908. This, however, did not prevent complainant from submitting testimony tending to show that construction. I think it is established that George Adams produced the construction covered by his patent as early as January, 1908, but this was nearly two years later than an equivalent construction made by the Simmons Company and placed in the Michael Reese Hospital beds. The changes made by complainant in his own de-

vice were simply minor ones, and were the natural outgrowth of the progress of the business of cheapening and simplifying the art. While the complainant's device is simple, cheap, and successful, I think it should be held that the patent is invalid for want of novelty.

There should be a decree dismissing the bill, with costs.